**UNITED STATES of America, Appellant,**

v.

**Steven ROBINSON, Defendant– Appellee.**

**No. 04–0889–CR.**

United States Court of Appeals, Second Circuit.

Argued: April 13, 2005.

Decided: Dec. 5, 2005.

Paul D. Silver, Assistant United States Attorney, for Glenn T. Suddaby, United States Attorney for the Northern District of New York (Robert P. Storch, Senior Litigation Counsel, Of Counsel, on the brief), for Appellant.

Frederick Rench, Pelagalli, Weiner & Rench, LLP, Clifton Park, NY, for Defendant–Appellee.

Before: WALKER, Chief Judge, LEVAL, Circuit Judge, and LYNCH, District Judge.*

LEVAL, Circuit Judge.

This is an appeal by the government from the district court's grant of a motion for new trial, setting aside a jury's finding of guilt on two of the four counts of conviction. Primarily at issue is the nature of the time limitations prescribed for such motions by Fed.R.Crim.P. 33 and 45–whether they are "jurisdictional" and thus not subject to forfeiture or waiver. A recent decision of the Supreme Court, *Eberhart v. United States,* —— U.S. ——, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (*per curiam* ), handed down since the argument of this case, resolves the most challenging question in this appeal.

On November 18, 2002, following a fifteen-day jury trial before the U.S. District Court for the Northern District of New York (Lawrence E. Kahn, *J.* ), the jury found defendant Steven Robinson guilty on all four counts charged, being one count of conspiracy to distribute (and possess with the intent to distribute) more than one hundred kilograms of marijuana, in violation of 21 U.S.C. § 846; two counts of using a firearm in furtherance of the marijuana conspiracy, in violation of 18 U.S.C. § 924(c); and one count of causing the death of another in the course of using a firearm in furtherance of the marijuana conspiracy, in violation of 18 U.S.C. § 924(j). Robinson requested, and received without objection, two extensions of time to file motions under Rules 29 and 33 for judgment of acquittal as a matter of law and a new trial. On May 14, 2003, the court granted a new trial with respect to one count of using a firearm in furtherance of the marijuana conviction, and one count of causing the death of another in the course of using a firearm in furtherance of the marijuana conspiracy. On appeal, the government argues that, even though the government did not object to the extension

---

* The Honorable Gerard E. Lynch, United States District Judge for the Southern District of New York, sitting by designation.

of the defendant's time to make the motions beyond the time authorized by Rules 33 and 45, the district court was nonetheless without jurisdictional power to rule on the untimely motions. The government argues further that in any event, the grant of the new trial motion was an abuse of discretion on the merits. We affirm the district court's ruling.

## Background

The charges against Robinson arise from a marijuana distribution operation in Albany, New York. Robinson and six co-defendants were charged in one superseding indictment. The other six defendants pleaded guilty, so that Robinson was tried alone. Counts IV and V, on which the court ordered a new trial, were based on a shooting which occurred on October 11, 2000. Because this appeal concerns only those two counts, our discussion focuses on the events of that day in Albany.

The trial evidence demonstrated that Robinson was involved in a marijuana-dealing operation in Albany. With respect to Counts IV and V, there was evidence that on October 11, 2000, at about seven o'clock, shots were fired from a white car on Swan Street, which killed Jerome Johnson and wounded Aukland Dubery, a rival drug dealer, and David Hood. Swan Street was described as an open-air drug market, with many dealers competing for business.

Several witnesses testified that the shots were fired from a white car. Only Dubery identified Robinson as present on the scene.[1] Dubery testified that he saw Robinson in the car, that Robinson was the driver and the only person in the car, and that he saw Robinson pull a bandanna over his face. Dubery testified that he then returned to a conversation with Jerome Johnson and heard the shots ring out. Dubery did not testify that he saw Robinson with a gun. Reba Johnson, a crack dealer on Swan Street, testified that she had, at some unspecified earlier time, heard Robinson threaten that if Dubery were to take another sale from him, "I will send you home in a body bag." The government's theory argued to the jury was that Robinson intended to kill his competitor Dubery, and accidentally shot Johnson and Hood as well.

During the trial, the defense substantially impeached Dubery. Dubery acknowledged on cross-examination that in the six hours preceding the shooting he smoked three marijuana cigars, and admitted to dealing drugs. The primary impeachment was his acknowledgment that he had twice told the police that he could not identify the man who shot him. Roughly five minutes after the shooting, when he was severely wounded, in response to police questioning he described the white car but said he did not know who shot him. A few days later, at the hospital, he again told a police officer that he did not know who had shot him. While Dubery was in the hospital, however, his girlfriend Rachel McAllister went to the police, and offered Dubery's cooperation in exchange for protection for Dubery, McAllister, and McAllister's child. They were put in the Witness Protection Program for more than two years, where they received money for food and rent, and other benefits worth tens of thousands of dollars. It was only after McAllister went to the police to ne-

---

1. There was another witness, Kimberly Smith, who identified Robinson as being in the white car. However, her testimony in important aspects contradicted Dubery's. For example, she identified Robinson as a passenger and another person as the driver. Smith's testimony was so thoroughly impeached at trial that the government told the jury to ignore her testimony and does not rely on it in this appeal. We therefore disregard her testimony.

gotiate for Dubery's cooperation that he identified Robinson. Dubery's explanation for his previous failure to identify Robinson was that he wanted to take revenge for himself.

On November 18, 2002, the jury returned a guilty verdict on all four counts. On November 26, 2002, Robinson filed a timely written request for an extension of time to file post-trial motions until December 19, 2002. The government did not object, and the court granted Robinson additional time to move. In a letter dated December 18, 2002, Robinson made a written request for a second extension until January 3, 2003. Again, the government did not object. The court granted the extension by order dated December 20, 2002.

Apparently a massive snowstorm prevented mail delivery and circulation until January 6, 2003, on which date Robinson filed his motion. (No issue is made on appeal of the fact that the motion was not filed until three days after the extended deadline of January 3.)

Robinson's motion sought judgment of acquittal pursuant to Rule 29, and a new trial pursuant to Rule 33. On January 27, 2003, the government filed opposition on the merits, but made no suggestion that the motions were untimely. By order of May 14, 2003, the court denied the motion for judgment of acquittal, but granted the motion for a new trial on the two counts relating to the October 11 shootings. *See United States v. Robinson*, 2003 WL 21095584 (N.D.N.Y. May 14, 2003), 2003 U.S. Dist. LEXIS 8016;. The court focused on the fact that the identification of Robinson as involved in the shooting incident depended so heavily on Dubery's testimony and that Dubery's testimony was so substantially impeached—especially by Dubery's prior denials that he knew who shot him, coupled with the advantages Dubery obtained and hoped to obtain for himself and his girlfriend through his newly voiced accusation of Robinson.

The district court expressed caution in supplanting the role of the jury in determining witness credibility, but asserted that this was one of those rare cases when a court's discretion must be exercised:

> The Court recognizes that the grant of a new trial is extraordinary. Having presided over several hundred trials in a thirty year period, this Court has upset jury verdicts only in a few exceptional cases, where judicial intervention was necessary to prevent a manifest injustice. This is one of those cases ....

2003 WL 21095584, at *5, 2003 U.S. Dist. LEXIS 8016, at *13.

On May 27, 2003, the government moved for reconsideration of the district court's new trial grant. In this motion, the government argued for the first time that the grant of a second extension of time to file post-trial motions was not authorized by Rules 33 and 45 and that the court accordingly lacked the jurisdiction to grant the motion for a new trial. The government also argued that the ruling was an abuse of discretion. The district judge rejected both arguments and denied the government's motion for reconsideration, noting that the district court had granted Robinson's second request for an extension "with the Government's consent." *United States v. Robinson*, 303 F.Supp.2d 231, 234 (N.D.N.Y.2004).

### Discussion

The government argues first that the district court lacked jurisdiction to grant a new trial because the motion was not made within the time prescribed by Rule 33, and second, that, even if the court did have jurisdiction, the grant of a new trial was an abuse of discretion. We reject both arguments.

## I. Jurisdiction.

■ Rule 33(b)(2) provides, "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7–day period."[2] The time limitations specified in Rule 33 are read in conjunction with Rule 45, which establishes how to compute and extend time. Rule 45(b)(2) provides, "The court may not extend the time to take any action under Rules 29, 33, 34, and 35, except as stated in those rules." It is undisputed that, after granting a first extension, the court then granted a second extension in response to a request made well outside the 7–day period after the verdict. The government asserts that the time limits required by Rule 33 are "jurisdictional," meaning that the trial judge lacked judicial power to authorize an extension beyond the time authorized by the rule.

As the government concedes, it did not oppose Robinson's request for an extension of time. Brief for Appellant at 3. The extension was granted. Robinson then moved for a new trial. The government opposed the motion only on the merits without protesting its untimeliness. The motion for a new trial was granted as to Counts IV and V. Only then for the first time in its motion for reconsideration did the government raise its contention of untimeliness.

■ It is clear under the circumstances that, if an objection based on timeliness is subject to waiver or forfeiture, the government forfeited the right to object by failing to raise the objection either in answer to the request for an extension or in its answer to the motion. Although we have discretion in such a matter, "[W]e generally 'will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration' ...." *Schwan–Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 35 (2d Cir.2005) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 159 (2d Cir.2003)). We see no reason to allow the government to assert a timeliness argument it twice declined to raise, and finally raised only after its substantive arguments had been rejected and the motion had been decided against it. The government can thus prevail on this argument only if Rule 33's time limits are "jurisdictional," meaning that they cannot be waived or forfeited because the court lacks the power to act.

Although the Supreme Court and our court have in the past characterized the time limits for such motions as "jurisdictional," *see United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960); *United States v. McCarthy*, 271 F.3d 387, 399 (2d Cir.2001), the Supreme Court in *Eberhart v. United States*, —— U.S. ——, —— – ——, 126 S.Ct. 403, 403–04, 163 L.Ed.2d 14 (2005) (*per curiam* ), recently clarified that they are not jurisdictional and can be waived.

In *Eberhart*, the defendant, who was convicted on one count of conspiring to distribute cocaine, moved for a judgment of acquittal, or in the alternative for a new trial, on the last permissible day for such motions. *Id.* at 404. That motion raised a single ground for relief. Nearly six

**2.** Between the first extension of time to file post-trial motions, granted November 26, 2002, and the second extension, granted December 20, 2002, the language of Rule 33 was modified slightly, including substituting the word "sets" for "may fix." According to the 2002 Advisory Committee Note for Rule 33, "These changes are intended to be stylistic only."

months later, the defendant filed a supplemental memorandum in support of that motion listing two additional grounds for relief. The government opposed the motion on the merits and did not argue that the untimeliness of the supplemental memorandum barred the district court from considering the issues it raised. The district court granted the new trial motion on the basis of an argument first raised in the untimely memorandum. *Id.* The Seventh Circuit reversed, declaring that the court was barred by the "jurisdictional" nature of the time limits of Rule 33 from considering the arguments raised in the untimely memorandum, notwithstanding the government's failure to challenge them on grounds of untimeliness before the district court. *See United States v. Eberhart,* 388 F.3d 1043, 1049 (7th Cir.2004).

The Supreme Court reversed the judgment of the Seventh Circuit. The Court acknowledged that it had described such limitations as jurisdictional. *Eberhart,* 126 S.Ct. at 406. However, the Court referred to its recent opinion in *Kontrick v. Ryan,* 540 U.S. 443, 456, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), which cautioned that such a characterization was misleading and meant only that such time limits were to be strictly enforced. The *Kontrick* Court explained that "[c]larity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* at 455, 124 S.Ct. 906. In *Kontrick,* the Court noted that even the strictest claim-processing rules are subject to forfeiture, while true "jurisdictional" limitations are not. "Characteristically, a

court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct; a claim-processing rule, on the other hand, even if unalterable on a party's application, can nonetheless be forfeited if the party asserting the rule waits too long to raise the point." *Id.* at 456, 124 S.Ct. 906. *See Eberhart v. United States,* 126 S.Ct. at 404–05. The Supreme Court in *Eberhart* ruled that Rules 33 and 45 are "claim-processing rules, despite the confusion generated by the less than meticulous uses of the term 'jurisdictional' in our earlier cases." *Id.* at 405 (internal quotation marks omitted). Because Rules 33 and 45 are claim-processing rules, and therefore subject to forfeiture, the Court reversed the Seventh Circuit, and ruled that the government's objection to the untimeliness of the motion was forfeited. *Id.* at 407.

Our case falls squarely under the holding of *Eberhart.* Just as in *Eberhart,* the government forfeited its objection to the untimeliness of Robinson's motion by failing to raise the objection in a timely fashion and not raising the issue until after the court had granted Robinson's motion for a new trial.[3]

## II. New Trial.

 Having resolved that the government's objection to the untimeliness of Robinson's Rule 33 motion for a new trial was forfeited, we reach the merits of the district court's ruling. The standard of review for a district court's grant of a new trial is abuse of discretion. *See United States v. Ferguson,* 246 F.3d 129, 133 (2d Cir.2001). We find that the district court did not abuse its discretion in granting Robinson's Rule 33 motion for a new trial on some of the counts of conviction.

---

**3.** By reason of changes to Rules 29, 33, and 45, which took effect December 1, 2005, the court now has greater latitude to extend the

time for such motions. *See* Report of the Advisory Committee on Criminal Rules, May 18, 2004, App. B, at 2, 4, 8.

As we have noted in the past, "[W]e are mindful that a judge has not abused her discretion simply because she has made a different decision than we would have made in the first instance." *Id.* In concluding that the district court did not abuse its discretion here we express no view as to whether we would have ruled the same way.

Rule 33 allows a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). We have observed that "[i]n exercising the discretion so conferred, the court is entitled to 'weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.'" *United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir.1992) (quoting *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980)). At the same time, as we have frequently emphasized, "the court may not wholly usurp the jury's role. 'It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment.'" *United States v. Autuori,* 212 F.3d 105, 120 (2d Cir.2000) (quoting *Sanchez,* 969 F.2d at 1414). As is fully evident from the portions of his opinion quoted above, Judge Kahn was fully aware and respectful of this limited role.

Given the numerous circumstances which seriously impeached Dubery's identification of Robinson, particularly his having twice earlier told the police that he did not know who his assailant was and the fact that he never saw Robinson with the gun, together with the paucity of other evidence implicating Robinson in the shooting, we cannot say the court abused its discretion in granting a new trial.[4]

**Conclusion**

For the foregoing reasons, we conclude that it was within the district court's jurisdiction to grant Robinson's motion for a new trial, and we AFFIRM the district court's grant of a new trial on counts IV and V.

---

4. We express no view as to whether, if Robinson is retried and again convicted on substantially this same evidence, such a conviction could be properly set aside.